**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JESSE DERRICK BOND, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 05-241 |
| | ) | |
| v. | ) | Judge Cercone |
| | ) | Magistrate Judge Caiazza |
| FNU RHODES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

It is respectfully recommended that the Defendants' Motion for Summary Judgment, (Doc. 85), be granted.

**II. REPORT**

This is a prisoner civil rights suit filed by Jesse Derrick Bond ("Bond" or "the Plaintiff") in which he raises several claims which will be detailed in this Report and Recommendation. The Defendants have filed a Motion for Summary Judgment, (Doc. 85), and the Plaintiff has responded. (Docs. 89, 90). The motion is ripe for disposition.

**A.   The Legal Standard**

Bond's burden in response to a well-pleaded motion for summary judgment is to present "specific facts showing that there is a genuine issue for trial . . . or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law". Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(internal citations and

quotations omitted).

## B.   **The Exhaustion of Administrative Remedies**

### 1.   The Applicable Law.

The Defendants assert that Bond has failed to exhaust his available administrative remedies with respect to all of the claims alleged in his Complaint. The applicable - and mandatory - exhaustion requirement which Congress enacted in the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996) reads as follows:

(a)   Applicability of administrative remedies

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C.A. § 1997e(a)(emphasis added). Before filing a civil action, a plaintiff-inmate must exhaust his administrative remedies; this requirement remains mandatory even if the ultimate relief sought by the prisoner is not available through the administrative process. See Booth v. Churner, 206 F.3d 289, 300 (3d Cir.2000), cert. granted, 531 U.S. 956 (2000), aff'd, 532 U.S. 731, (2001). There is no "futility" exception to the administrative exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002)(citing Nyhuis v. Reno, 204 F.3d 65, 78 (3d Cir. 2000)). Further, it is insufficient for a prisoner to establish that "there is no further process available to the inmate within the grievance system". Spruill v. Gillis, 372 F.3d

-2-

218, 227-28 (3d Cir.2004). Rather, the Spruill court made clear
that §1997e(a) requires an inmate to "avail[ ] himself of every
process at every turn (which would require all appeals to be
timely pursued, etc.)." Id. In short, "it is beyond the power of
this court - or any other- to excuse compliance with the
exhaustion requirement, whether on the ground of futility,
inadequacy or any other basis." Nyhuis, 204 F.3d at 73 (citation
and quotation omitted).

The prison grievance procedure in this case, known as DC-ADM
804, provides a three-part review: (1) the prisoner must file a
grievance within fifteen days with the grievance coordinator; (2)
the prisoner may appeal to the facility manager within five days
of receipt of the initial review; and(3) the prisoner may appeal
to the Central Office Review Committee.

    2. The Analysis

       a. Grievances 39813 and 39658.

Several of Bond's claims are premised upon actions
complained of in Grievance Nos. 39813 and 39658; each of these
grievances address alleged inappropriate comments and
"suggestive" touching of Bond by Defendant Rhodes.   The
Defendants have presented evidence which shows that Bond did not
appeal either of these grievances to final review.   Bond concedes
that he did not complete the administrative appeal process, but
argues that the Defendants frustrated his attempts, *i.e.*, he

-3-

claims that he has substantially complied with the grievance appeal procedures.

The parties agree that Bond appealed the denial of both grievances to final review, but that the Grievance Review Officer, in a letter dated February 11, 2003, advised Bond that his appeal did not comply with DC-ADM 804 because it lacked the appropriate documentation. Bond received this letter, which informed him that he had ten working days to submit the required documentation. The parties also agree that Bond, after receiving the letter dated February 11, 2003, requested an extension of time in a letter dated February 20, 2003. In response, the Central Office granted Bond's extension request and allowed him until March 12, 2003 to submit the documents; no further action, however, was taken by Bond.

Bond argues that he never received a response to his February 20, 2003 request for an extension of time. In Bond's view, the failure to either respond to his request, or to provide him with a copy of the letter granting him an extension of time, "deprived [him] of his final appeal" because he was not given sufficient time to submit the applicable documents. (Doc. 89, at 2). In effect Bond argues that he substantially complied with the administrative review requirements by requesting an extension of time in which to provide the documentation.

The Court of Appeals for the Third Circuit has not spelled

-4-

out in detail what, if anything, would constitute substantial compliance with the administrative procedures process sufficient to warrant a finding that proper exhaustion has occurred in the prison context. However, in <u>Key v. Craig</u>, 160 Fed. Appx. 125 (3d Cir. 2005), the Court found that a prisoner whose administrative appeal was not acted upon because he failed to attach the required documentation had not "substantially complied" with the grievance procedures when he filed the documents late and with the wrong party. The Court specifically held that "[the Plaintiff's] failure to even attempt compliance with the grievance procedures cannot be sufficiently substantial to act as an excuse." <u>Keys</u>, 160 Fed.Appx. at 126.

Likewise, in this case, Bond failed to comply with the grievance procedure initially by failing to attach the required documentation. Even assuming that he failed to receive the letter granting him an extension, Bond could still have attempted to provide the required documents at some point in the process. Instead, he chose to allow his appeal attempt to remain dormant. In sum, Bond chose to stop attempting to appeal his grievance. To paraphrase the Court in <u>Key</u>, Bond's decision to simply stop attempting to provide the proper documentation is not a "sufficiently substantial" compliance with the applicable prison grievance procedures.

Bond's claims premised upon Grievance Nos. 39813 and 39658

-5-

cannot be addressed by this court due to Bonds' failure to
properly exhaust the available administrative remedies.

      b. <u>Grievance 44034</u>.

    In this grievance Bond raises a retaliation claim against
Defendant Rhodes, Specifically, he asserts that Rhodes made
derogatory comments to another inmate about him on February 10,
2003.  Bond filed Grievance No. 44034 on February 10, 2003 with
respect to this incident, and it was denied on March 4, 2003.
The Defendants have presented evidence which shows that Bond
never appealed the denial of this grievance.  Bond has attached
to his response two documents which purport to be requests he
filed inquiring about the status of his appeal from the denial of
Grievance No. 44034; nothing in this record, however, shows that
either document was received by Department of Corrections'
personnel. That said, the Court need not address the issue of
exhaustion because this claim was filed beyond the applicable
statute of limitations.

    The Complaint in this case is dated February 15, 2005.  Bond
alleges that the conduct supporting his claim occurred on
February 10, 2003.  Consequently, any claim arising from the
February 10, 2003 actions of Defendant Rhodes is time-barred.
The statutory limitations period for a §1983 claim is determined
by state law. <u>Wilson v. Garcia</u>, 471 U.S. 261, 272-76 (1985) (42
U.S.C. § 1983). Specifically, under Pennsylvania law the

-6-

applicable limitations period for civil rights actions commenced
pursuant to 42 U.S.C. §1983 is two years. See 42 Pa. Cons. Stat.
§ 5524.

Bond argues that his claim did not accrue until his
grievance was denied in March, 2003.  However, the date when a
civil rights action accrues is a matter of federal law. See
Albright v. Oliver, 510 U.S. 266, 280 n.6 (1994) (J. Ginsburg,
concurring).  A claim accrues when the plaintiff is aware, or
should be aware, of both the fact of injury and its causal
connection to the Defendant. See Delaware State College v. Ricks,
449 U.S. 250, 258 (1980)(usually it is the wrongful act that
triggers the run date of the limitations period); see also
Keystone Ins. Co. v. Houghton, 863 F.2d 1125, 1127 (3d Cir. 1988)
(a federal cause of action accrues when the plaintiff is aware,
or should be aware, of the existence of and source of injury).
Here, Bond's claim accrued on February 10, 2003  –the precise
date on which he became aware of the offending actions of
Defendant Rhodes. Consequently, this claim is time-barred and
Defendant Rhodes is entitled to summary judgment.

c. The February 12, 2003 Misconduct Report

Bond was issued a misconduct report on February 12, 2003,
charging that he disobeyed an order.  He alleges that the
misconduct report, and Defendant Mathews' February 14, 2003 guilt
decision were both forms of retaliation generated by the

-7-

grievances he filed against Defendant Rhodes. The Defendants argue that the retaliation claims were not set out in a grievance. Bond asserts that he stated his retaliation claim in his appeal from the misconduct.

Again, the Court need not rule on the issue of exhaustion since these claims accrued, at the latest, on February 14, 2003; the earliest possible filing date the court can ascribe to the Complaint is February 15, 2005  -the date Bond signed the Complaint. Although it is only a matter of one day, Bond's claim nonetheless is time-barred.[1]

### d. Lost Property - Grievance No. 76595

Next, Bond asserts that some of his property was lost by the Defendants, and that he raised this issue in Grievance No. 76595. Bond, however, signed this grievance as having been "resolved." As a result, his attempts to appeal the grievance were dismissed. Bond now asserts that he signed the grievance to "avoid an illegal search of his assigned cell." (Doc. 89, at 5).

Bond's motivation for marking the grievance resolved is irrelevant because his signature withdrawing the grievance

---

1. Pursuant to the Pennsylvania computation of time statute, a court must exclude the first day of the time period, and include the last day of any period of time referred to in any statute. 1 Pa. Cons. Stat. Ann. § 1908. Therefore, the statute of limitations clock began to run on February 15, 2003, the day after Bond's cause of action accrued, and the two-year statute expired on February 14, 2005, or exactly two years after the cause of action accrued.

prevented him from pursuing an appeal.[2] Because of a procedural

default, this court is prevented from addressing the merits of

Bond's claim. Spruill, supra; Nyhuis, 204 F.3d at 73 (Court

cannot excuse failure to comply with exhaustion requirement).[3]

        e. Food Poisoning and Tampering with Mail

Bond concedes that he never filed grievances with respect to

his remaining claims which arise out of an alleged food poisoning

incident occurring on April 19, 2003; he also alleges a mail

tampering claim. Bond, however, does not offer any argument

whatsoever with respect to the alleged mail tampering incident.

The Court will interpret his silence as a concession that he

failed to exhaust the available administrative remedies with

respect to this claim.

Turning to the alleged food poisoning incident, Bond asserts

that he believed some unidentified prison personnel, in

retaliation for the grievances he filed, attempted to poison him

on April 19, 2003; as a result Bond experienced cramping and

diarrhea. He claims that he did not file a grievance because he

---

2.    Bond has no right to privacy in his cell, and could not have
prevented a search of his cell in any event. See, e.g., Hudson v.
Farmer, 468 U.S. 517, 526 (1984)(Fourth Amendment's "proscription
against unreasonable searches does not apply within the confines of
the prison cell."). Thus, Bond's argument that he was "forced" to
resolve the grievance in an attempt to avoid having his rights
violated is baseless.

3.    Additionally, none of the Defendants in this case were named in
the Grievance, which is a further procedural default preventing
review. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004).

feared for his safety.  Bond concedes, however, that he continued
to file grievances at later dates, but argues that he did so only
because he thought it was "safe to do so."  In fact, the records
reflect that Bond first filed a grievance following the April 19,
2003 incident in December, 2003, based on a health care
complaint. (Doc. 87, Ex. 6).

     The record here shows that the Plaintiff was not shy about
filing grievances at other times during his incarceration, which,
incidentally, involved a series of largely picayune complaints.
As an example, he filed a grievance on March 3, 2003, six weeks
prior to the alleged food poisoning incident, complaining that an
officer, while distributing danish roles to the prisoners,
touched the "wicket" door with his keys; he characterized this
act as being "unsanitary." (Doc. 87, Ex. 6). By and large, his
complaints in this case relate to verbal insults made by  guards.
The conduct cited by Bonds and which serves as the basis of his
argument, in his eyes, evidences a prison environment in which a
prisoner dwells in fear of bodily harm.  Interestingly, fear of
retaliation has not prevented Bond from filing two lawsuits
against his jailers in this court. In the face of the
overwhelming evidence showing Bond's ability and willingness to
grieve almost any perceived problem, however slight, and the lack
of any evidence which shows that his one bout of diarrhea was the
result of any intentional action by prison personnel, his claim

-10-

that he failed to grieve because he feared bodily injury boarders
incredulity.  In any event, "[u]nsupported allegations of fear
are insufficient to defeat the Defendants well-pled motion for
summary judgment-especially because it is beyond the power of
this court ... to excuse compliance with the exhaustion
requirement, whether on the ground of futility, inadequacy or any
other basis." <u>Rohn v. Beard</u>, Slip Copy, 2007 WL 709324 (W.D.Pa.,
2007) (Hardiman, J.)(internal quotation and citation omitted).

### III. <u>CONCLUSION</u>

The Plaintiff's claims are all barred either by a failure to
properly exhaust administrative remedies, or by the applicable
statute of limitations. It is respectfully recommended that the
Motion for Summary Judgment filed by Defendants, (Doc. 85), be
granted.


In accordance with the Magistrate's Act, 28 U.S.C. § 636
(b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for
Magistrates, objections to this Report and Recommendation are due
by August 16, 2007.


July 31, 2007                   _Francis X. Caiazza_____
                                Francis X. Caiazza
                                United States Magistrate Judge


-11-

cc:
JESSE DERRICK BOND
BZ-2493
Box 244
Graterford, PA 19426-0244